IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| CHRISTINA SHUTLZ,<br><br>               Plaintiff,<br><br>v.<br><br>DIXIE STATE UNIVERSITY; STEPHEN NADAULD, in his official and individual capacities; and RICHARD WILLIAMS, in his official and individual capacities,<br><br>               Defendants. | MEMORANDUM DECISION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS DIXIE STATE AND RICHARD WILLIAMS' PARTIAL MOTION TO DISMISS<br><br>Case No. 2:16-CV-830 TS<br><br>District Judge Ted Stewart |

      This matter is before the Court on Defendants' Partial Motion to Dismiss and Supporting

Memorandum. For the reasons set forth below, the Court will grant the motion in part and deny it

in part.

## I. BACKGROUND

      The facts alleged in Plaintiff's Complaint are as follows: Plaintiff Christina Shutlz

("Plaintiff") has worked in higher education leadership positions for twenty-six years. She began

working as Vice President of Institutional Advancement for Defendant Dixie State University

("Dixie State") in or around November 2005. Plaintiff was the first female vice president at

Dixie State. Her duties included fundraising, alumni relations, public relations, marketing,

publications, and cultural arts. Under then-President of the University, Lee Caldwell, Plaintiff

received regular salary increases and merit-based pay increases. In 2008, Lee Caldwell left Dixie

State and Defendant Stephen Nadauld ("Nadauld") took over the role of President of the

University. Nadauld is male and a member of the Church of Jesus Christ of Latter Day Saints ("LDS" or "Mormon").

Beginning with Nadauld's tenure, Plaintiff alleges she was subjected to a series of discriminatory conduct on the basis of her gender and religion, including the following: Plaintiff stopped receiving regular salary increases and was paid less than her male vice president colleagues; Nadauld indicated to Plaintiff that being a female and non-Mormon was a professional liability; Plaintiff "heard that Mormon males in leadership positions resented her because she was a woman in a senior management position and was paid a high salary, and thus she set a 'bad example' for Mormon women;"[1] Plaintiff was taken out of the rotation for being in charge of Dixie State when the president of the University was absent; Nadauld assigned Plaintiff undesirable projects in an attempt to "force" Plaintiff to quit;[2] and Plaintiff received numerous emails over the course of her employment with Dixie State "that evidenced serious in-faculty arguments over Mormons and non-Mormons, commonly known at Dixie State as 'insiders' and 'outsiders.'"[3]

Plaintiff alleges that she regularly made complaints to Nadauld regarding this conduct, which Nadauld did not address. Nadauld retired in August of 2014. Prior to his retirement he gave a "religious-based lecture, aimed at [Plaintiff]," which Plaintiff took to be a threat that Plaintiff should stop making complaints and reports of discrimination and to "toe the line."[4]

---

[1] Docket No. 2, at 7.

[2] *Id.*

[3] *Id.* at 6.

[4] *Id.* at 7.

Defendant Richard Williams ("Williams") took over Nadauld's position as President of Dixie State University in August 2014. Williams is also male and of the LDS faith. On or about August 14, 2014, Plaintiff informed Williams of her treatment under Nadauld and requested a pay raise. At this point, Plaintiff had become the lowest paid vice president at the University. Some time later, Williams told Plaintiff he had discussed the situation with Nadauld and another employee and determined there was no discrimination at Dixie State.

Plaintiff states that Williams would praise Plaintiff at meetings and other public functions, but secretly instructed the director of human resources to find a reason to terminate Plaintiff.

In the fall of 2014, Plaintiff left on a business trip to the Middle East to meet with University donors. Williams, allegedly aware that Plaintiff was suffering from an illness that made travel difficult, required Plaintiff to return to Utah from Egypt. Plaintiff states she was the third female to be treated differently by Williams regarding business travel. On November 26, 2014, shortly after returning to Utah, Plaintiff was taken to the emergency room by ambulance and diagnosed as having a "potentially life threatening" condition.[5] Plaintiff filed a complaint against Williams with human resources that same day.

On November 29, 2014, Williams suspended Plaintiff without explanation. The next day, Plaintiff filed a formal grievance against Nadauld for the discriminatory environment he fostered during his time as President of the University. Human resources found the grievance to have no merit.

---

[5] *Id.* at 9.

On December 2, 2014, Plaintiff's medical provider requested leave under the Family Medical Leave Act ("FMLA") on behalf of Plaintiff. Shortly thereafter, Williams demanded that Plaintiff attend a meeting regarding the request, which Plaintiff was unable to attend because she was on medical orders to stay home and rest. Plaintiff states that Williams was aware of the medical orders.

On or about December 11, 2014, Plaintiff received a letter stating that she had been terminated from her employment for failing to make a scheduled appointment. The reason for her termination was allegedly changed two months later. Plaintiff claims that during her time at Dixie State she never received "a performance review, discipline, or criticism of any kind."[6] Plaintiff was the only female vice president at Dixie State prior to her termination. Following her termination, Plaintiff learned that a Mormon male had taken over her responsibilities.

Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") on or about December 15, 2014, and received a Notice of Right to Sue on May 16, 2016. Plaintiff filed her Complaint with the Court on July 22, 2016.

## II. STANDARD OF REVIEW

In considering a motion to dismiss for failure to state a claim upon which relief can be granted under Rule 12(b)(6), all well-pleaded factual allegations, as distinguished from conclusory allegations, are accepted as true and viewed in the light most favorable to Plaintiff as the nonmoving party.[7] Plaintiff must provide "enough facts to state a claim to relief that is

---

[6] *Id.* at 10.

[7] *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997).

plausible on its face,"[8] which requires "more than an unadorned, the-defendant-unlawfully harmed-me accusation."[9] "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"[10]

"The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted."[11] As the Court in *Iqbal* stated,

> only a complaint that states a plausible claim for relief survives a motion to dismiss. Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief.[12]

## III. DISCUSSION

Plaintiff's Complaint alleges eight causes of action: (1) Breach of Contract against Dixie State; (2) Breach of the Duty of Good Faith and Fair Dealing against Dixie State; (3) Discrimination on the Basis of Religion and Hostile Work Environment in Violation of Title VII against Dixie State; (4) Discrimination on the Basis of Sex and Hostile Work Environment in Violation of Title VII against Dixie State; (5) Retaliation on the Basis of a Protected Activity in Violation of Title VII against Dixie State; (6) Violations of the Equal Protection Clause of the

---

[8] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

[9] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[10] *Id.* (quoting *Twombly*, 550 U.S. at 557).

[11] *Miller v. Glanz*, 948 F.2d 1562, 1565 (10th Cir. 1991).

[12] *Iqbal*, 556 U.S. at 679 (internal citations and quotation marks omitted).

Fourteenth Amendment under 42 U.S.C. § 1983 against Dixie State, Nadauld in his official and individual capacities, and Williams in his official and individual capacities; (7) Interference, Denial, and Retaliation in Violation of the Family Medical Leave Act against Dixie State; and (8) Violations of the Equal Pay Act against Dixie State.

Defendants move for dismissal of each of these claims, either in whole or in part. The Court will address each of Plaintiff's causes of action and the arguments for their dismissal.

A. BREACH OF CONTRACT AND THE DUTY OF GOOD FAITH AND FAIR DEALING

Plaintiff's first two causes of action allege that Dixie State breached its contract with Plaintiff and that Dixie State breached the duty of good faith and fair dealing. Defendants argue that both of these claims should be dismissed because Dixie State is entitled to sovereign immunity in accordance with the Eleventh Amendment.

"[A]n assertion of Eleventh Amendment immunity concerns the subject matter jurisdiction of the district court" and therefore requires an analysis under Rule 12(b)(1) of the Federal Rules of Civil Procedure.[13]

> Generally, Rule 12(b)(1) motions to dismiss for lack of subject matter jurisdiction take two forms. First, a facial attack on the complaint's allegations as to subject matter jurisdiction questions the sufficiency of the complaint. . . . Second, a party may go beyond allegations contained in the complaint and challenge the facts upon which subject matter jurisdiction depends.[14]

---

[13] *Ruiz v. McDonnell*, 299 F.3d 1173, 1180 (10th Cir. 2002).

[14] *Holt v. United States*, 46 F.3d 1000, 1002–03 (10th Cir. 1995) (internal citations omitted).

Here, Dixie State's Eleventh Amendment immunity challenge constitutes a facial attack on the allegations of subject matter jurisdiction contained in the complaint. "In reviewing a facial attack on the complaint, a district court must accept the allegations in the complaint as true."[15]

The Eleventh Amendment provides that "[t]he Judicial Power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."[16] The Supreme Court has extended the Amendment's applicability beyond suits brought by citizens or governments of another state to include suits by citizens brought against their own state.[17] Therefore, to be granted Eleventh Amendment immunity, "a defendant must qualify as a state or an 'arm' of a state."[18]

The Tenth Circuit has "consistently held that state colleges and universities are arms of the state"[19] and Plaintiff does not make an argument to the contrary. Dixie State is therefore an arm of state and will accordingly be granted immunity unless Plaintiff can show an exception applies.

As applied against the State, "[t]he sole exceptions [to Eleventh Amendment immunity] are (1) when Congress has abrogated the states' immunity, as in legislation enacted to enforce

---

[15] *Id.* at 1002.

[16] U.S. Const. amend. XI.

[17] *Welch v. Tex. Dep't of Highways & Pub. Transp.*, 483 U.S. 468, 472 (1987) ("[T]he Court long ago held that the Eleventh Amendment bars a citizen from bringing suit against the citizen's own State in federal court, even though the express terms of the Amendment refer only to suits by citizens of another State.").

[18] *Ruiz*, 299 F.3d at 1180.

[19] *Sturdevant v. Paulsen*, 218 F.3d 1160, 1170 (10th Cir. 2000).

the Fourteenth Amendment; and (2) when a state waives its immunity."[20] Plaintiff concedes that

her second cause of action for breach of the implied covenant of good faith and fair dealing

against the State does not fall under either exception and is therefore barred from suit in federal

court. However, Plaintiff argues that her first cause of action for breach of contract meets the

second exception because the State of Utah has voluntarily waived its immunity regarding

contract claims in Utah's Government Immunity Act, specifically in § 63G-7-301 of the Utah

Code.

"Waiver of sovereign immunity must be knowing and voluntary."[21] "When a statute or

other document purportedly waives a state's Eleventh Amendment immunity, [the Court] 'will

give effect to the waiver only where stated by the most express language or by such

overwhelming implication from the text as will leave no room for any other reasonable

construction.'"[22]

In *Atascadero State Hospital v. Scanlon*,[23] the Supreme Court explained that "[a] State's

constitutional interest in immunity encompasses not merely whether it may be sued, but where it

may be sued."[24] "Thus, in order for a state statute . . . to constitute a waiver of Eleventh

Amendment immunity, it must specify the State's intent to subject itself to suit in *federal*

---

[20] *Pettigrew v. Okla. ex rel. Okla. Dep't of Pub. Safety*, 722 F.3d 1209, 1212 (10th Cir. 2013).

[21] *Id.* at 1213.

[22] *Id.* (quoting *Port Auth. Trans-Hudson Corp. v. Feeney*, 495 U.S. 299, 305 (1990)).

[23] 473 U.S. 234 (1985).

[24] *Id.* at 241 (*quoting Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 99 (1984)).

*court.*[25] Federal courts therefore do not have jurisdiction over the State "[i]n the absence of an unequivocal waiver specifically applicable to federal-court jurisdiction."[26]

Section 63G-7-301 of the Utah Code states "[i]mmunity from suit of each governmental entity is waived as to any contractual obligation." The Statute makes no mention of federal courts and therefore has not provided an "unequivocal waiver specifically applicable to federal-court jurisdiction." Further, § 63G-7-501 states, "district courts have exclusive, original jurisdiction over any action brought under [the Governmental Immunity Act]." The Tenth Circuit has found that this language is a "positive expression of policy against suits against Utah in United States courts."[27] The State of Utah has therefore not elected to waive its Eleventh Amendment immunity in regards to contract claims.[28]

The Court therefore finds that it does not have jurisdiction over Plaintiff's first and second causes of action alleging breach of contract and breach of the implied covenant of good faith and fair dealing, and accordingly dismisses these claims without prejudice.

## B. CAUSES OF ACTION UNDER TITLE VII

Plaintiff has alleged three causes of action under Title VII: Religious discrimination and hostile work environment, gender discrimination and hostile work environment, and retaliation. Defendant moves for dismissal of each of these claims, either in whole or in part, on one or more

---

[25] *Id.*

[26] *Id.*

[27] *Sutton v. Utah State School for Deaf and Blind*, 173 F.3d 1226, 1235 (10th Cir. 1999) (quoting *Richins v. Industrial Const., Inc.*, 502 F.2d 1051, 1055 (10th Cir. 1974)).

[28] *See also Zimmerman v. Univ. of Utah*, No. 2:13-CV-01131-JNP-DBP, 2016 WL 6839371, at *2 (D. Utah Nov. 21, 2016) ("[T]he Governmental Immunity Act does not waive Utah's Eleventh Amendment immunity and the University, as an 'arm of the state,' may not be haled into federal court on state law claims.") (unpublished).

of the following grounds: (1) any allegations of disparate treatment supporting causes of action under Title VII occurring prior to February 18, 2014, are time-barred; (2) Plaintiff lacks standing to make claims related to a "pattern of disparate treatment;" and (3) Plaintiff has failed to allege facts sufficient to support her claims for disparate treatment, hostile work environment, and retaliation.

1. *Allegations of Disparate Treatment Occurring Prior to the 300-day Limitations Period*

Defendants argue that any factual allegations supporting Plaintiff's Title VII claims occurring prior to February 18, 2014, are time-barred.

"In states in which a state agency has authority to investigate employment discrimination ('deferral states'), Title VII requires claimants to file a charge of discrimination within 300 days of the alleged unlawful employment practice. Utah is a deferral state."[29] Title VII plaintiffs are required to "exhaust his or her administrative remedies" with the EEOC before proceeding to file suit in district court.[30] Plaintiff filed a complaint with the EEOC on or around December 15, 2014.

"[E]ach discrete incident of [discriminatory] treatment constitutes its own 'unlawful employment practice' for which administrative remedies must be exhausted."[31] "[O]nly incidents that took place within the [300-day] filing period are actionable."[32] Applying the applicable 300-day time limit, all alleged discriminatory actions occurring prior to February 18, 2014, are time

---

[29] *Davidson v. Am. Online, Inc.*, 337 F.3d 1179, 1183 n.1 (10th Cir. 2003); 42 U.S.C. § 2000e–5(e)(1).

[30] *Shikles v. Sprint/United Mgmt. Co.*, 426 F.3d 1304, 1317 (10th Cir. 2005).

[31] *Martinez v. Potter,* 347 F.3d 1208, 1210 (10th Cir. 2003) (quoting *Nat'l R.R. Passenger Corp. v. Morgan,* 536 U.S. 101, 110–13 (2002)).

[32] *Morgan*, 536 U.S. at 114.

barred as they relate to Plaintiff's claims of religious discrimination, gender discrimination, and retaliation under Title VII.

However, "[a]s applied to hostile environment claims . . . the 300-day requirement has proven problematic because a hostile work environment claim is composed of a series of separate acts that collectively constitute one unlawful employment practice."[33] In addressing this problem, the Supreme Court has held that "consideration of the entire scope of a hostile work environment claim, including behavior alleged outside the statutory time period, is permissible for the purposes of assessing liability, so long as an act contributing to that hostile environment takes place within the statutory time period."[34] Therefore, any allegations of discriminatory behavior related to Plaintiff's hostile work environment claims will be considered, so long as one of the related allegations occurred after February 18, 2014.

### 2. *Plaintiff's "Pattern of Disparate Treatment" Allegations*

Under Plaintiff's third cause of action she states that Defendant Dixie State "engaged in a pattern or practice of purposefully and intentionally discriminating against its non-Mormon employees, including Shultz, by ignoring complaints of discrimination and allowing non-Mormon employees to be treated in a derogatory and demeaning manner."[35] Under her fourth cause of action, Plaintiff similarly states that Dixie State "engaged in a pattern or practice of purposefully and intentionally discriminating against its female employees, including Shultz, by ignoring complaints of discrimination and allowing female employees to be treated in a

---

[33] *Tademy v. Union Pac. Corp.*, 614 F.3d 1132, 1138–39 (10th Cir. 2008) (internal citations and quotation marks omitted).

[34] *Morgan*, 536 U.S. at 105.

[35] Docket No. 2, at 16.

derogatory and demeaning manner."[36] Defendants argue that these allegations are barred from consideration because Plaintiff lacks standing to assert a claim for pattern and practice discrimination. Plaintiff disagrees and argues that pattern and practice discrimination is an actionable claim and that it permits the inclusion of evidence that falls outside the relevant time limitation.

42 U.S.C. § 2000e6(a) provides a method by which the Attorney General may bring an action against a person or group "engaged in a pattern or practice of resistance to the full enjoyment of any rights secured by [Title VII]." The Supreme Court later extended this statute to apply to class action suits.[37] However the "pattern or practice" language does not create a separate cause of action, but instead creates an alternate means to prove a violation of Title VII.[38] The Tenth Circuit has held, "[t]he disparities between both of these methods of proof and the remedies available demonstrate that the pattern-or-practice method should be reserved for government actions or plaintiffs in class actions to establish the presence of a discriminatory policy, rather than to prove an individual claim."[39] "[I]ndividual plaintiffs may not utilize the pattern or practice method of proof in Title VII suits."[40] Therefore, though Plaintiff does have standing to bring a disparate treatment claim, she may not prove the alleged disparate treatment by use of the "pattern or practice" method. Accordingly, Plaintiff may not rely on the pattern or

---

[36] *Id.* at 19.

[37] *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 357–60 (1977).

[38] *Semsroth v. City of Wichita*, 304 F. App'x 707, 715 (10th Cir. 2008).

[39] *Id.* at 716–17.

[40] *Id.* at 717.

practice method to introduce otherwise expired allegations supporting her claims for gender and religious discrimination.[41]

3.  *Failure to State a Claim*

Defendants argue that Plaintiff has not alleged facts sufficient to support Plaintiff's claims for religious discrimination, gender discrimination, hostile work environment, and retaliation insofar as that claim involves actions taken by Nadauld. Defendants accordingly move for their dismissal pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

*i. Disparate Treatment*

Title VII makes it unlawful for an employer to "discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."[42] Plaintiff alleges that Dixie State violated Title VII by discriminating against her on the basis of both gender and religion.

In *McDonald Douglas Corporation v. Green*,[43] the Supreme Court set forth the burden shifting framework of a Title VII discrimination case. Under this framework, the Plaintiff must first establish a prima facie case of discrimination by demonstrating that "(1) she is a member of a protected class, (2) she suffered an adverse employment action, (3) she qualified for the position at issue, and (4) she was treated less favorably than others not in the protected class."[44] "The prima facie case under *McDonnell Douglas*, however, is an evidentiary standard, not a

---

[41] *See id.*

[42] 42 U.S.C. § 2000e-2(a)(1).

[43] 411 U.S. 792 (1973).

[44] *Khalik v. United Air Lines*, 671 F.3d 1188, 1192 (10th Cir. 2012).

pleading requirement."[45] Therefore, "an employment discrimination complaint need not include

such facts and instead must contain only 'a short and plain statement of the claim showing the

pleader is entitled to relief.'"[46] However, "general assertions of discrimination and retaliation,

without any details whatsoever of events leading up to her termination are insufficient to survive

a motion to dismiss."[47] A plaintiff must "nudge her claims across the line from conceivable to

plausible."[48]

By way of clarifying the application of the above stated standard, the Tenth Circuit has

explained that,

> while the 12(b)(6) standard does not require that a plaintiff establish a prima facie
> case in her complaint, the elements of each alleged cause of action help to
> determine whether she has set forth a plausible claim. Accordingly, to assess
> whether [Plaintiff's] complaint is "plausible" and thus survives the defendants'
> 12(b)(6) motion to dismiss, we start by discussing the elements a plaintiff must
> prove to establish a claim for discrimination.[49]

Looking to the prima facie elements, Plaintiff's Complaint states facts sufficient to

survive a motion for dismissal under Rule 12(b)(6).[50] Plaintiff alleges that she is a female and

---

[45] *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 510 (2002).

[46] *Id.* at 508 (quoting Fed. R. Civ. P. 8(a)(2)).

[47] *Khalik*, 671 F.3d at 1193.

[48] *Morman v. Campbell Cty. Mem'l Hosp.*, 632 F. App'x 927, 932 (10th Cir. 2015) (citing *Twombly*, 550 U.S. at 570).

[49] *Id.* at 932 (citing *Khalik*, 671 F.3d at 1192).

[50] Defendants argue that Plaintiff has not sufficiently pleaded a claim for disparate treatment because she failed to identify a position for which Plaintiff was qualified, applied for, and was not hired. This argument relies upon the standard for discriminatory failure to promote under Title VII. Defendants are correct in stating that Plaintiff's Complaint suggests she was denied opportunities for advancement. *See* Docket No. 8, at 7. However, "[t]he prima facie case is a flexible standard that may be modified to relate to different factual situations." *Randle v. City of Aurora*, 69 F.3d 441, 451 n.13 (10th Cir. 1995). It is therefore not fatal to Plaintiff's discrimination claim that she has not alleged to have been discriminatorily denied a promotion.

was of different faith than those directly supervising her[51] and has therefore stated she was a member of a protected class. Plaintiff also states that she suffered adverse employment action in that she was fired[52] and stopped receiving regular pay increases.[53] Additionally, Plaintiff's Complaint alleges she was paid less than other University vice presidents who were male and of the LDS faith, that she was assigned less desirable duties and was required to split some of her responsibilities with a Mormon male in an unprecedented fashion, and that Nadauld told her that being a woman and a non-Mormon was a professional liability.

Notably, Plaintiff's Complaint lacks some of the specific details of these alleged actions, such as the dates on which they happened. However, courts do not require all the specific details at the pleading stage, only "certain details" that nudge the allegations from possible to plausible.[54]

Plaintiff's Complaint states that she was a member of a protected class, alleges that she suffered adverse employment action, specifies some ways in which she was treated differently

---

Plaintiff has stated several grievances beyond lacking opportunities for advancement, which are discussed in this section.

[51] *See Shapolia v. Los Alamos Nat. Lab.*, 773 F. Supp. 304, 305 (D.N.M. 1991), *aff'd sub nom. Shapolia v. Church of Jesus Christ of Latter-Day Saints*, 13 F.3d 406 (10th Cir. 1993) ("Surely Title VII forbids requiring religious conformity in order to receive the fair and equal treatment by an employer.") (internal citations and quotation marks omitted).

[52] *See Daniels v. United Parcel Serv., Inc.,* 701 F.3d 620, 635 (10th Cir. 2012) ("An adverse employment action is a significant change in employment status, such as a hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.").

[53] *See Muhleisen v. Principi*, 73 F. App'x 320, 324 (10th Cir. 2003) (affirming the lower court's holding that being denied a "two-step pay raise and 300 hours of leave" qualified as an adverse employment action); *Brewer v. Cornerstone Nutritional Labs, L.L.C.*, No. 1:05-CV-146 TS, 2008 WL 222681, at *6 (D. Utah Jan. 25, 2008) (finding a "pay raise denial is a material adverse employment action") (unpublished).

[54] *Khalik*, 671 F.3d at 1194.

than those outside her protected class, and alleges that her superior made discriminatory comments to her regarding her membership in a protected class.[55] Taken collectively, these allegations provide sufficient detail to support Plaintiff's disparate treatment claims. The Court accordingly denies Defendants' request to dismiss Plaintiff's third and fourth causes of action.

### ii. Hostile Work Environment

A plaintiff states a claim of discrimination based on a hostile work environment if they can show that "the workplace [was] permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment."[56] The Supreme Court has "directed courts to determine whether an environment is sufficiently hostile or abusive by 'looking at all the circumstances,' including the 'frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'"[57] In making this determination, the court considers "the work atmosphere both objectively and subjectively, looking at all the circumstances from the perspective of a reasonable person in the plaintiff's position."[58]

---

[55] *See Juarez v. Utah Dep't of Health-Family Dental Plan*, No. 2:05-CV-0053-PGC, 2006 WL 2037574, at *2 (D. Utah July 18, 2006) (finding that the court could infer Plaintiff had been treated differently on the basis of race where the complaint alleged two incidents where the defendants had made derogatory comments regarding her being Hispanic) (unpublished).

[56] *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21 (1993) (internal citations and quotation marks omitted).

[57] *Faragher v. City of Boca Raton*, 524 U.S. 775, 787–88 (1998) (quoting *Harris*, 510 U.S. at 23.

[58] *Tademy*, 614 F.3d at 1144 (quoting *Herrera v. Lufkin Indus., Inc.*, 474 F.3d 675, 680 (10th Cir. 2007)).

The Tenth Circuit has explained that "Title VII does not establish a general civility code for the workplace. Accordingly, the run-of-the-mill boorish, juvenile, or annoying behavior that is not uncommon in American workplaces is not the stuff of a Title VII hostile work environment claim."[59] Accordingly, "[a] plaintiff does not make a sufficient showing of a pervasively hostile work environment 'by demonstrating a few isolated incidents of sporadic slurs. Instead, there must be a steady barrage of opprobrious comments."[60]

Here, Plaintiff has not alleged sufficient facts to support her hostile work environment claim. Supporting Plaintiff's claim for a hostile work environment on the basis of gender discrimination, Plaintiff has alleged that, at an undisclosed date, "Nadauld indicated to Shultz that being a woman and a non-Mormon was a liability for her official job duties;"[61] that at an undisclosed date and frequency Plaintiff heard that "male Mormons in leadership positions resented her because she was a woman in a senior management position and was paid a high salary, and thus she set a 'bad example' for Mormon women,"[62] that the human resources director had been ordered not to investigate allegations of sex discrimination, and that she was the third woman unfavorably treated in regards to a business trip.

Supporting her claims for hostile work environment on the basis of religious discrimination, Plaintiff has alleged that over the course of her employment at Dixie State she received "numerous emails . . . that evidenced serious in-faculty arguments over Mormons and

---

[59] *Morris v. City of Colo. Springs*, 666 F.3d 654, 663–64 (10th Cir. 2012) (internal citations and quotation marks omitted).

[60] *Id.* at 666 (quoting *Chavez v. New Mexico*, 397 F.3d 826, 832 (10th Cir. 2005)).

[61] Docket No. 2, at 4.

[62] *Id.* at 7.

non-Mormons, commonly known at Dixie State as 'insiders' and 'outsiders'"[63] and that upon

Nadauld's retirement he explained to Plaintiff that after the President of the LDS church dies, the

remaining leadership comes together to choose a new leader, which Plaintiff understood as

discouraging her from filing reports of discrimination and to "toe the line."[64]

Considering these allegations as true, Plaintiff has not alleged sufficient facts supporting

a claim for hostile work environment. First, the allegations that Mormon males in leadership

positions resented her and that non-Mormons were commonly known as "outsiders" are too

speculative to support a cause of action. While courts "do not mandate the pleading of any

specific facts in particular, there are certain details the Plaintiff should know and could properly

plead to satisfy the plausibility requirement."[65] Such facts include when the alleged conduct

occurred, who was involved, and the context of the conduct.[66] Plaintiff's Complaint does not

provide any facts regarding the details of these alleged comments that would push these claims

from possible to plausible. Specifically, Plaintiff does not allege a time frame or a frequency at

which these comments were made, does not allege who said these comments, and does not

provide any context in which these comments were made. These allegations therefore cannot

support Plaintiff's claim of hostile work environment.

Plaintiff's allegation that human resources was ordered not to investigate allegations of

sex discrimination also does not support a claim for hostile work environment. Ignoring claims

of discrimination could contribute to a hostile work environment if employees made frequent

---

[63] *Id.* at 6.

[64] *Id.* at 7.

[65] *Khalik*, 671 F.3d at 1194.

[66] *Id.*

complaints, which human resources ignored. Plaintiff has not alleged that human resources ignored frequent reports of sex discrimination.

The remaining facts alleging that Nadauld indicated to Plaintiff that being a woman and a non-Mormon was a liability, that Plaintiff was called home from a business trip, and that Nadauld made a religious reference in allegedly discouraging Plaintiff from complaining of discriminatory activity, are not sufficient to show Plaintiff's work environment was "permeated with discriminatory intimidation." Taken collectively, these accusations amount only to "a few isolated" instances of alleged discriminatory conduct, which cannot support a claim for hostile work environment.

Plaintiff has not provided facts that could lead this Court to find it plausible that Defendants fostered a hostile work environment on the basis of either gender or religious discrimination. The Court will therefore dismiss Plaintiff's claims for hostile work environment without prejudice.

### iii. Retaliation

Defendants argue that Plaintiff's fifth cause of action for retaliation should be dismissed in part. Specifically, Defendants argue that Plaintiff has not stated a claim for retaliation in regard to actions taken by Nadauld.

To state a prima facie case for retaliation under Title VII, a plaintiff must show "(1) that [s]he engaged in protected opposition to discrimination, (2) that a reasonable employee would have found the challenged action materially adverse, and (3) that a causal connection existed between the protected activity and the materially adverse action."[67] Considering these elements,

---

[67] *Id.* at 1193.

Plaintiff's Complaint does not contain sufficient allegations by which the Court could find Nadauld retaliated against Plaintiff.

Plaintiff's Complaint contains sufficient facts by which the Court could infer that Plaintiff's numerous complaints to Nadauld amounted to protected activity.[68] However, Plaintiff has failed to specify any materially adverse actions made taken by Nadauld that occurred within the permissible time frame. Notably, Plaintiff's Opposition Memorandum does not point to a single allegation contained in the Complaint supporting that Nadauld took adverse action against Plaintiff.[69] Absent any specific allegations, the Court cannot infer that Nadauld took retaliatory action against Plaintiff. The Court will accordingly dismiss Plaintiff's fifth cause of action insofar as it relies upon Nadauld's actions.

## C. SECTION 1983 EQUAL PROTECTION CLAIMS

Plaintiff's sixth cause of action alleges violations of the Equal Protection Clause by Dixie State, Nadauld in his official and individual capacities, and Williams in his official and individual capacities. Defendants argue that this claim should be dismissed against the University because the University is entitled to Eleventh Amendment immunity on this issue and the University is not a "person" as required by § 1983. Plaintiff agrees. Defendants also argue that this claim should be dismissed against Williams in his official capacity because state officials sued in their official capacity are not subject to § 1983 claims. Plaintiff agrees. The Court will therefore dismiss the claims in Plaintiff's sixth cause of action against Dixie State and Williams in his official capacity without prejudice. Defendants do not move to dismiss this claim

---

[68] *See* Docket No. 2, at 4–6.
[69] *See* Docket No. 11, at 7.

against Nadauld in his official capacity. However, because the Parties agree that state officials cannot be sued in their official capacities under § 1983, the Court will also dismiss Plaintiff's sixth cause of action against Nadauld in his official capacity.

Finally, Defendants argue that the Court should dismiss Plaintiff's sixth cause of action against Williams in his individual capacity because Plaintiff has not stated a claim for violation of the Equal Protection Clause. Plaintiff does not agree.

Plaintiff's sixth cause of action alleges that Williams violated the Equal Protection Clause of the Fourteenth Amendment by "discriminat[ing] against [Plaintiff] (and other female employees) through [his] practice of favoring male employees over female employees, discounting [Plaintiff's] concerns regarding sex discrimination, and valuing male employees by giving them higher salaries, benefits, and opportunities over [Plaintiff] and other female employees."[70]

The Equal Protection Clause requires that no state "deny to any person within its jurisdiction equal protection of the laws."[71] "This constitutional guarantee 'prohibits state and local governments from treating similarly situated persons differently.' The fundamental guarantee is that 'all persons similarly situated should be treated alike.'"[72]

"Different types of equal protection claims call for different forms of review. . . . But in each instance, 'to assert a viable equal protection claim, plaintiffs must first make a threshold

---

[70] Docket No. 2, at 22.

[71] U.S. Const. amend. XIV, § 1.

[72] *Morman*, 632 F. App'x at 934 (quoting *Rector v. City & Cty. of Denver*, 348 F.3d 935, 949 (10th Cir. 2003); *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985)).

showing that they were treated differently from others who were similarly situated to them.'"[73] Plaintiff fails to make this threshold showing.

Plaintiff's Complaint alleges several adverse actions Williams took against Plaintiff, including: that Williams called her back early from a business trip overseas when he knew she was ill and that she was the "third female to be treated differently by Williams regarding official business trips for Dixie state;"[74] that Williams told the human resources director to look for reasons to terminate Plaintiff; that Williams unfairly suspended and ultimately terminated Plaintiff, and that Plaintiff was the last remaining female at the time she was fired and was replaced by a man. Each of these alleged adverse actions are insufficient to support a claim for violation of the Equal Protection Clause because the allegations do not include facts by which the Court could infer that Williams' treatment of Plaintiff was less favorable than that of her male colleagues.

The allegation that Williams treated Plaintiff and three other women "differently" in regards to business trips is too conclusive and vague to merit consideration. The Court can therefore only consider that Plaintiff was called back from a business trip and is a woman. This alone does not state a cause of action under the Equal Protection Clause. Plaintiff does not allege that her male colleagues who were sent on business trips were not called back early or otherwise better treated by Williams.

Similarly, the allegation that Williams looked for reasons to terminate Plaintiff, suspended Plaintiff, and ultimately terminated Plaintiff cannot support a claim of unequal

---

[73] *Brown v. Montoya*, 662 F.3d 1152, 1172–73 (10th Cir. 2011) (quoting *Barney v. Pulsipher*, 143 F.3d 1299, 1312 (10th Cir. 1998)).

[74] Docket No. 2, at 8.

treatment without additional facts showing that similarly situated males who took similar action to Plaintiff were not subject to the same adverse treatment. Plaintiff's Complaint alleges that Dixie State's stated reason for her termination was that she failed to attend a required meeting. Plaintiff alleges that the true reason Williams sought to fire and ultimately did fire Plaintiff was because of her complaints to Williams about the discrimination that existed at Dixie State under Nadauld.[75] Plaintiff has not alleged any facts suggesting that Williams did not fire or otherwise punish males who either failed to attend a required appointment or made complaints to Williams.

That Plaintiff was the last female vice president also fails to support an inference that Williams violated the Equal Protection Clause without more specific facts. The Court has no information regarding the number of female vice presidents that were employed at the beginning of Williams' tenure, the qualifications of these female vice presidents, or the reasons for their leaving the University during Williams' tenure. Similarly, that Plaintiff was replaced by a male does not provide the Court with sufficient detail to infer her termination was motivated by gender discrimination where Plaintiff has not alleged there was a similarly situated female who was as or more qualified for the job.

Plaintiff's Complaint does not contain the requisite allegations that Williams treated males with greater favor than Plaintiff or other females, or that Williams made derogatory or discriminatory comments to Plaintiff that suggest a discriminatory motive. As such, Plaintiff has not alleged sufficient facts by which the Court could infer that any adverse action taken by Williams violated the Equal Protection Clause. The Court will therefore dismiss Plaintiff's sixth cause of action against Williams in his individual capacity without prejudice.

---

[75] *Id.* at 21.

D. FMLA CLAIM

Plaintiff's seventh cause of action alleges that Dixie State violated the Family Medical Leave Act (FMLA). Defendants argue that the State has immunity from this claim under the Eleventh Amendment.[76] Plaintiff agrees. The Court will therefore dismiss Plaintiff's seventh cause of action without prejudice.

E. EQUAL PAY ACT CLAIM

Finally, Plaintiff alleges that Dixie State violated the Equal Pay Act[77] by not paying her the same as the males that held vice president positions at the University. Defendants argue this cause of action should be dismissed because the Complaint does not contain sufficient factual allegations to state a claim for an Equal Pay Act violation.

To establish a prima facie case under the Equal Pay Act, Plaintiff must allege facts showing: (1) that Plaintiff was "performing work which was substantially equal to that of the male employees considering the skills, duties, supervision, effort and responsibilities of the jobs; (2) the conditions where the work was performed were basically the same; and (3) the male employees were paid more under such circumstances."[78] District courts have found that, consistent with the *Iqbal/Twombly* tenure, claims under the Equal Pay Act must go beyond "bald allegations that male employees were paid more than female employees."[79] As such, district courts have dismissed claims under the Equal Pay Act where the complaint did not contain facts

---

[76] *See Coleman v. Ct. App. Of Md.*, 566 U.S. 30, 33 (2012).

[77] 29 U.S.C. § 206.

[78] *Tidwell v. Fort Howard Corp.,* 989 F.2d 406, 409 (10th Cir.1993).

[79] *Lehman v. Bergmann Assocs., Inc.*, 11 F. Supp. 3d 408, 420 (W.D.N.Y. 2014) (quoting *Suzuki v. State Univ. of N.Y. Coll. at Old Westbury*, No. 08-CV-4569 TCP, 2013 WL 2898135, at *4 (E.D.N.Y. June 13, 2013) (unpublished).

demonstrating *how* the work for which plaintiffs were receiving less payment was substantially similar to that of their higher paid male coworkers.[80]

The allegations in the Complaint state the following: that from the time Plaintiff was hired to the time she was fired, Plaintiff went from "one of the highest paid" vice presidents at Dixie State to "one of the lowest paid" vice presidents;[81] that males who performed "substantially equal work" were given higher salary increases than Plaintiff;[82] that Plaintiff's successor "received a higher salary bump" than Plaintiff had received in the six years prior;[83] and that Plaintiff's male vice president co-workers "performed substantially similar work under similar working conditions."[84]

These supporting facts are insufficient to survive a motion to dismiss. Plaintiff has provided the Court with no information as to how her work was similar to that of her vice president colleagues, only that it was "substantially similar" or "substantially equal." The fact that Plaintiff shared the title of "vice president" with her male colleagues does not create an

---

[80] *Lehman*, 11 F. Supp. 3d at 420 (finding plaintiff's complaint failed to state a claim under the EPA where the plaintiff conclusively stated "upon information and belief her male counterparts had comparable performance and responsibilities" and did not explain "[h]ow . . . her position [was] comparable or substantially similar [or] . . . [w]hat responsibilities . . . they share[d]."); *Suzuki v. State Univ. of N.Y. Coll. at Old Westbury*, No. 08-CV-4569 TCP, 2013 WL 2898135, at *4 (E.D.N.Y. June 13, 2013) (dismissing plaintiff's EPA claim under 12(b)(6) where plaintiff stated only that she and other female employees were paid less than the male employees although "she performed equal, or superior, work and had equal or better qualifications and experience."); *Baumgardner v. ROA Gen., Inc.*, 864 F. Supp. 1107, 1109 (D. Utah 1994) (holding the allegations in the complaint to be insufficient to support a claim under the Equal Pay Act where the plaintiffs "made no effort to allege how each of the positions were 'substantially equal' to" that of their male co-workers, but instead included merely a "list of job duties.").

[81] Docket No. 2, at 25.

[82] *Id.* at 26.

[83] *Id.*

[84] *Id.*

assumption that the work performed was substantially similar. University vice presidents do not necessarily undertake the same tasks as they oversee different departments and maintain responsibility for different university functions.

Plaintiff argues that this cause of action is not suitable for a motion to dismiss and such a determination should be made only after discovery has taken place. She further contends that the mere allegation that the work was "substantially similar" or "substantially equal" is sufficient to state a claim under the Equal Pay Act under Rule 12(b)(6). In accordance with the case law stated above, this is an incorrect statement of the law. Because Plaintiff has not sufficiently alleged facts supporting her claim under the Equal Pay Act, the Court will dismiss Plaintiff's eighth cause of action without prejudice.

## III. CONCLUSION

It is therefore

ORDERED that Defendants' Partial Motion to Dismiss (Docket No. 8) is GRANTED in part and DENIED in part. Plaintiff's first, second, sixth, seventh and eighth causes of action shall be dismissed in their entirety without prejudice. Plaintiff's fifth cause of action shall be dismissed insofar as the claim relies on actions taken by Defendant Nadauld. The remaining causes of action shall not be dismissed.

DATED this 11th day of May, 2017.

BY THE COURT:

Ted Stewart
United States District Judge